UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN A. METSACK AND GAIL D. METSACK | : : : | NO.: 3:14-CV-01150-VLB |
| v. | : : | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY | : : | DECEMBER 1, 2014 |

### DEFENDANT'S REPLY BRIEF

The defendant, Liberty Mutual Fire Insurance Company ("Liberty"), hereby submits this reply brief in support of its motion to dismiss.

### ARGUMENT:

A.   <u>The Basement Walls Are Part Of The Foundation</u>:

The policy term "foundation" is not ambiguous and includes the concrete basement walls.  The plaintiffs extensively discuss the policy interpretations by courts in Alabama and Rhode Island without addressing the Connecticut Supreme Court's opinion in *Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246 (1987).  In *Beach*, the Court provided a definition for the undefined term "collapse" in an insurance policy. In the course of doing so, it referred to the basement walls as the "foundation" or "foundation walls" eleven times.  Based upon this seminal decision, it appears that the Supreme Court of Connecticut does not consider "foundation" in the insurance policy context to be ambiguous.

The United States District Court, District of New Jersey also did not consider "foundation" ambiguous in *Wurst v. State Farm Fire and Casualty Co.*, 431 F.Supp. 2d 501 (D.N.J. 2006) (collapse of "basement walls" or "foundation

walls" not covered under homeowners' policy). The plaintiffs attempt to distinguish the *Wurst* Court's interpretation of the term "foundation" within the insurance policy context on page 11 of their memorandum in opposition ("opposition"). However, the *Wurst* Court's opinion is clear in acknowledging that "basement walls" or "foundation walls" are encompassed within the insurance policy term "foundation."

A similar conclusion was reached in *Shoemaker v. Liberty Mut. Ins. Co.*, 17 Mass.L.Rptr. 57 (Mass. Super. Ct. 2003), wherein the plaintiffs sought recovery for the collapse of the foundation wall at the right rear underneath the attached garage. The court ruled for the insurer, citing the exclusions under the collapse provision for "loss to a…foundation, retaining wall…" The Shoemakers did not argue that "foundation" or "retaining wall" was ambiguous and the opinion made clear that any such argument would have proven unsuccessful:

> "…loss to a foundation is within a list of ancillary items to a home under the plain terms of the provision. The ancillary terms are not part of the building. As such, reading the provision to allow for insurance coverage when the collapse of the Shoemakers' 'foundation' was not caused by the collapse of the garage itself, would render the exclusionary phrase, '…unless the loss is a direct result of the collapse of a building,' meaningless." *Id.*

On page 8 of their opposition, the plaintiffs cited to *Campbell v. Norfolk & Dedham Mut. Fir. Ins. Co.*, 682 A.2d 933 (R.I. 1996), a case in which the Supreme Court of Rhode Island overturned summary judgment in favor of the insurer by ruling that to require loss to a foundation to be recoverable only if it results from the complete collapse of a building would render illusory the policy provision insuring the risk against collapse of a building or any part of it. The Court did not

2

making a ruling that "foundation" was ambiguous. Moreover, its ruling only precluded summary judgment. The Court noted that, as is the law in Connecticut, if the court finds ambiguity in a policy term, a question of fact exists which must be resolved by the finder of fact, which was the jury. *Cambell*, 682 A.2d. at 936.

The plaintiffs cited the decision of the Alabama Supreme Court in *Turner v. State Farm and Cas. Co.,* 614 So.2d 1029 (Ala. 1993) on page seven of their opposition in support of their contention that "foundation" is ambiguous. However, the Turners indicated that the basement walls when constructed formed the interior walls of the first floor of their house. The Turners alleged that they filled dirt around the walls to make a basement after construction. *Turner*, 614 So.2d at 1031. Thus, there is a clear factual distinction between the instant matter and those at issue in *Turner*.

There was a time not long ago when even the plaintiffs' attorney would not have considered the undefined term "foundation" to be ambiguous. In *Parker v. Worcester Ins. Co.,* 247 F.3d 1 (1st. Cir. 2001), he brought suit to recover for the "collapse" of his basement walls. The policy in that matter contained an identical collapse provision. The argument that "foundation" was ambiguous was not made through the time of appeal, despite eleven references in the opinion to the basement walls as the "foundation" or "foundation walls." However, the Court noted that "…lawyers are inventive in finding ambiguities to construe against the insurer. While we think it is fair to point out the apparent difficulties, this is without prejudice to resolution after full briefing." *Parker*, 247 F.3d at 6. Thus, the First Circuit also did consider "foundation" to be ambiguous.

The First Circuit accurately forecasted what lie ahead in the interpretation of the "collapse" provision in homeowners policies—lawyers inventing ambiguities where none otherwise exist.  In *Bacewicz v. NGM Ins. Co.*, 2010 WL 3023882 (D. Conn. 2010) this Court noted that "…much of the evidence in this case indicates that the terms 'basement walls' and 'foundation walls' are used interchangeably" while referencing the testimony of the Bacewiczs' engineering expert, David Grandpre.  Thus, there is also no confusion or ambiguity in the term "foundation" in common engineering industry parlance.

On page 9 of their opposition, the plaintiffs claim that language on page 9 of the policy concerning calculation of the replacement cost value of the building further supports their argument that the basement walls are part of the "building." To the contrary, the cited provisions clearly indicate that excavations, foundations, piers and any other supports are *not* part of the building.  The plaintiffs further state on page 9 of their opposition that "Walls under the policy are considered 'foundation' walls' only if there is 'no basement."  There is no such provision in the policy which states anything closely resembling this claim.

This is a lawsuit which can survive a motion to dismiss only if undue credence is given to an inventive lawyer-created ambiguity with no real world applicability.  Even if it does, however, the trier of fact (in this case, a jury) will decide the parties' intent as to undefined policy terms which a court has deemed ambiguous.  Only if the trier of fact is unable to do so will an ambiguous term be construed against the insurer.  On page 6 of their opposition, the plaintiffs claim that this is not the law regarding resolution of purported insurance policy


ambiguities and claim that the defendant failed to cite a case which involved the proper interpretation of an insurance policy. Liberty encourages the plaintiffs to review its cite on page 11 of its memorandum of law in support of motion to dismiss to *Metro Life Ins. Co. v. Aetna Cas. and Sur. Co.,* 255 Conn. 295, 306 (2001). It also encourages the plaintiffs to review the recent opinion of the Chief Justice of the Connecticut Supreme Court, the Honorable Chase T. Rogers:

> "…in the event that an insurance policy term is deemed to be ambiguous, the parties are entitled to present extrinsic evidence regarding the mutual intent of the insured and the insurer as to the scope of coverage, and the trial court must consider that evidence before applying the rule of contra proferentem to resolve the ambiguity in favor of the insured. In other words, the rule should be applied as a tie breaker only when all other avenues to determining the parties' intent have been exhausted."

*Connecticut Ins. Guar. Ass'n. v. Drown*, 314 Conn. 161 (2014).

      B.    <u>The Basement Walls Are Retaining Walls</u>:

Even if the concrete basement walls that support the plaintiffs' home are not part of the "foundation" (which is expressly denied), they are retaining walls that prevent earth from entering the basement. Indeed, the dictionary authority cited by the plaintiffs on page 10 of their opposition from http:dictionary.reference.com/browse/retaining+wall supports this interpretation ("a wall for holding in place a mass of earth or the like, as at the edge of a terrace or excavation"). The plaintiffs also cite a definition of retaining walls from britannica.com on page 10. A review of that cite reveals that anyone can create a britannica.com account and edit the definition. The cited definition was last edited by user "abdessamade hafoud" on July 24, 2012. As much as Liberty respects "abdessamade hafould's" definition of "retaining wall" (or that of any

subsequent user who chooses to edit it), it is not instructive as to the proper dictionary definition of retaining wall. The purpose of a retaining wall is to hold back earth.  Whether the wall is free-standing or attached to a structure, if it serves that function, it is a retaining wall.  This is clearly set forth in the only credible dictionary definition the plaintiffs cite.

Moreover, the Supreme Court of Connecticut in *Beach* referred to the basement walls as "retaining walls" three times.  Apparently it found no ambiguity in the term. There was no argument set forth in *Parker*, cited *supra*, that the term "retaining wall" was ambiguous when that Court construed an identical policy provision.  On page ten of their opposition the plaintiffs claim that there is a "commonly understood" definition of "retaining walls" and "colloquial understanding" of same which is in line with their proffered definition.  However, they provide no credible support for these claims.

  C. <u>**There is Compelling Justification For Certification to the Connecticut Supreme Court:**</u>

The plaintiffs oppose certification to the Connecticut Supreme Court for determination of whether "foundation" and "retaining wall" as used in a homeowners insurance policy are ambiguous, as demonstrated on page 12 of their opposition.  However, should Liberty's motion to dismiss be denied, this course of action would be in the best interests of the parties, other insureds involved in similar litigation, and the courts.  This Court is unquestionably capable of interpreting the subject policy provisions and terms.  However, its interpretations are not necessarily consistent with those which would be reached by the Connecticut Supreme Court, particularly in light of the language employed

in *Beach*, cited *supra*. This Court declined to certify to the Connecticut Supreme Court in the *Belz* and *Karas* matter, likely prior to the realization that there were dozens of lawsuits concerning the same issues coming down the pike. This Court and the parties are proceeding blindly without any binding precedent. The current state of affairs benefits only the involved attorneys, resulting in costly litigation and, almost certainly, appeals prior to a Connecticut appellate court having an opportunity to weigh in on an issue of critical importance in this state.

    D.    <u>The Extra-Contractual Claims Are Legally Insufficient</u>:

The plaintiffs bring extra-contractual claims against the defendant only to indicate on page 13 of the opposition that they are going to sue their prior insurer, Allstate, for the same loss while admitting that "…Liberty would only need to cover the loss if it occurred during the time that Liberty insured the property." Thus, if even the plaintiffs and their counsel cannot determine which insurer they allege should bear liability to pay their claim it stands to reason that the defendant's denial of their claim was performed in bad faith or in violation of CUTPA/CUIPA. While the plaintiffs continually reference this Court's rulings in *Belz* and *Karas*, neither of those plaintiffs indicated an intent to bring their prior insurer into the litigation for the same claim for which Liberty allegedly should bear extra-contractual liability for denying.

Moreover, the decision of the Connecticut Supreme Court in *Capstone Building Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 794-98, 67 A.3d 961 (2013), is clear—absent a wrongful denial of a benefit under the policy, there can

be no action for bad faith. Here, there is no coverage for the "collapse" of the plaintiffs' "foundation." Therefore, there is no bad faith.

Further, "[t]o constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. *Alexandru v. Strong,* 81 Conn.App. 68, 80-81, 837 A.2d 875, *cert. denied*, 268 Conn. 906, 845 A.2d 406 (2004), citing *Gupta v. New Britain General Hospital,* 239 Conn. 574, 598, 687 A.2d 111 (1996). Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose. *Habetz v. Condon,* 224 Conn. 231, 237, 618 A.2d 501 (1992)." *De La Concha of Hartford, inc. v. Aetna Life Ins. Co.,* 269 Conn. 424, 433, 849 A.2d 382 (2004). (Internal quotation marks omitted.)

> Disagreement between an insurer and insured as to coverage of the appropriate amount to which the insured is entitled is not equivalent to bad faith and, standing alone, does not evince dishonest purpose. The insured's demand may itself be excessive and unwarranted, or the insurer's rejection of the claim may be erroneous but honestly held.
>
> With respect to the implied covenant of good faith and fair dealing, "[a] party to a contract is entitled to take reasonable positions to protect its interests and to resist efforts that would compromise its legal rights," *Elliot v. Staron,* 46 Conn.Sup. 38, 48 (1997), affirmed 54 Conn.App. 532 (1999); appeal dismissed, 255 Conn. 18 (2000). Reasonable measures may include the refusal to pay benefits to an insured. *Sansone v. Nationwide Mutual Fire Insurance Co.,* 62 Conn.App. 526 (2001).

8

*Jones v. Standard Fire Ins. Co.*, 2013 WL 541015 (Conn.Super. 2013).

There is no cause of action against an insurer under CUTPA outside of a violation of CUIPA.  *State v. Acordia*, 310 Conn. 1, 73 A.3d 711 (2013).  Further, under CUIPA, the plaintiffs must plead and prove a general business practice on the part of Liberty of unfairly denying claims.  A defendant's alleged improper conduct in the handling of a single insurance claim does not rise to the level of a general business practice as required by § 38a-816 (6).  *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 847-48, 643 A.2d 1282 (1994); *Mead v. Burns*, 199 Conn. 651, 666, 509 A.2d 11 (1986).  The plaintiffs have not sufficiently pleaded that Liberty has a general business practice of denying claims.

In order to make cognizable extra-contractual claims, the plaintiffs have to provide details as to the claim reported to the insurer so it can formulate a response.  Thus, in the event the Court declines to certify this matter or dismiss it, the plaintiffs should be required to more definitively state what they communicated to the insurer.  The plaintiffs have the same contactor, Dean Soucy, and same attorney as those retained by numerous other insureds in "concrete decay" lawsuits.  Thus, if the plaintiffs cannot allege that a "concrete decay" or collapse" claim was made then they cannot state a cause of action for breach of contract, yet alone for bad faith or violation of CUTPA/CUIPA.  Instead, it would support the defendant's reasonable suspicions that the plaintiffs were intentionally vague in reporting their claim in order to "up the ante" in this litigation by the inclusion of baseless extra-contractual claims.

              **DEFENDANT,**
              **LIBERTY MUTUAL FIRE INSURANCE**
              **COMPANY,**

              **By  /s/ Philip T. Newbury, Jr.**
                **Philip T. Newbury, Jr. (ct05283)**
                **Kieran W. Leary (ct29484)**
                **Howd & Ludorf, LLC**
                **65 Wethersfield Avenue**
                **Hartford, CT  06114**
                **(860) 249-1361**
                **(860) 249-7665 (Fax)**
                **E-Mail:  pnewbury@hl-law.com**
                **E-Mail:  kleary@hl-law.com**


              **CERTIFICATION**

   This is to certify that on December 1, 2014, a copy of the foregoing Reply Brief was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

**Michael D. Parker, Esq.**
**Jeffrey R. Lindequist, Esq.**
**Law Office of Michael D. Parker**
**One Monarch Place, Suite 2200**
**Springfield, MA  01144-2220**
**413 736-4101**
**413 736-4582 fax**
**mparker@mdparkerlaw.com**
**jlindequist@mdparkerlaw.com**


              **/s/ Philip T. Newbury, Jr.**
              **Philip T. Newbury, Jr.**