UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN A METSACK, ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 3:14-cv-01150-VLB |
| v. | : | |
| | : | |
| LIBERTY MUTUAL FIRE INSURANCE | : | |
| COMPANY, ET AL. | : | |
| | : | JULY 18, 2016 |
| Defendants. | : | |

DEFENDANT ALLSTATE INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>

Raymond T. DeMeo (ct02189)
Jessica A. R. Hamilton (ct29702)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Phone:  860-275-8200
Fax:  860-275-8299
Email: <u>rdemeo@rc.com</u>
Email: <u>jhamilton@rc.com</u>

*Attorneys for Defendant*
*Allstate Insurance Company*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

RELEVANT FACTUAL BACKGROUND ......................................................3

APPLICABLE LEGAL STANDARDS ..........................................................8

LEGAL ARGUMENT .............................................................................9

   I.   ALLSTATE DID NOT BREACH THE CONTRACT BECAUSE THE CLAIMED LOSS CONSISTS OF CRACKING DAMAGE TO WALLS CAUSED BY DEFECTIVE CONCRETE, AND IS NOT WITHIN THE POLICIES' COVERAGE GRANT..............9

     A.   Loss Consisting of or Caused By Cracking Of Walls Is Excluded Under The Policies. ..............................................................................10

     B.   Loss Caused By Defective Materials Used In Construction Is Not Covered Under The Policies...............................................................11

   II.   PLAINTIFFS CANNOT NEGATE THE APPLICATION OF THESE EXCLUSIONS OR ESTABLISH ANY BREACH BY RELYING ON THE ADDITIONAL COVERAGE FOR "COLLAPSE" BECAUSE THERE WAS NO COLLAPSE DURING THE ALLSTATE POLICY PERIOD.......................................14

   III.   EVEN ASSUMING, CONTRARY TO THE EVIDENCE, THAT A COLLAPSE OCCURRED DURING ALLSTATE'S POLICY PERIOD, THERE IS STILL NO BREACH BECAUSE ANY COLLAPSE WAS NOT "SUDDEN AND ACCIDENTAL" AS REQUIRED BY THE POLICY..........................................................24

   IV.   ALLSTATE DID NOT BREACH THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING...................................................................28

     A.   Because Allstate Is Entitled To Summary Judgment As To The Breach Of Contract Count, It Is Also, As A Matter Of Law, Entitled To Summary Judgment As To The Bad Faith Count ................................................28

     B.   Alternatively, There Is No Evidence In The Record To Support Plaintiffs' Bad Faith Claim .................................................................29

   V.   ALLSTATE IS NOT LIABLE UNDER CUTPA/CUIPA .....................................31

     A.   Because Allstate Is Entitled To Summary Judgment As To The Breach Of Contract Count, It Is Also, As A Matter Of Law, Entitled To Summary Judgment As To The CUTPA/CUIPA Counts ......................................31

     B.   Alternatively, There Is No Evidence In The Record to Support Plaintiffs' CUTPA/CUIPA Claims .........................................................32

CONCLUSION .................................................................................36

## TABLE OF AUTHORITIES

Cases

*401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 174 (Pa. 2005)..............21

*Am. Econ. Ins. Co. v. CHL, LLC,* 2016 U.S. Dist. LEXIS 88286 (W.D. Wash. July 7, 2016)...................................................................................................................19

*Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, Docket No. 1:07-CV-01756, 2010 U.S. Dist. LEXIS 129077 (M.D. Pa. Aug. 31, 2010) ..............................28

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .........................................................8

*Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.,* 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011) ......27, 28

*Auto Owners Ins. Co. v. Allen*, 362 So. 2d 176 (Fla. Dist. Ct. App. 1978) ................21

*Bacewicz v. NGM Insurance Co.*, No. 3:08-CV-1530 (JCH), 2010 U.S. Dist. LEXIS 77682 (D. Conn. Aug. 2, 2010) ..............................................................................23

*Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246 (1987) ...................16, 17, 18, 20

*Bell Power Sys. v. Hartford Fire Ins. Co.*, Docket No. CV 92 0065538, 1995 Conn. Super. LEXIS 448 (Conn. Super. Ct. Feb. 15, 1995) (Aurigemma, J.)...................13

*BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603 (2d Cir. 1996).........18

*Boston Co. Real Estate Counsel v. Home Ins. Co.*, 887 F. Supp. 369 (D. Mass. 1995)..................................................................................................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..............................................................8

*Censor* v. *ASC Techs. of Conn., LLC*, 900 F. Sup. 2d 181 (D. Conn. 2012)...............9

*Chorches v. Stewart Title Guaranty Co.*, 48 F. Supp. 3d 151 (D. Conn. 2014) ........28

*Community Action v. American Alliance Insurance Company,* 254 Conn. 387, 757 A.2d 1074 (2000)...............................................................................................9

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 849 A.2d 382 (2004)..................................................................................................................29

*Doheny West Homeowners' Ass'n v. American Guar. & Liab. Ins. Co.*, 70 Cal. Rptr. 2d 260 (Cal. Ct. App. 1997) ..............................................................................19, 20

*Edmond v. Hartford Ins. Co.,* Docket No. 3:98 CV 1653, 2008 U.S. Dist. LEXIS 15825 (D. Conn. Mar. 3, 2008).............................................................................13

*Elm St. Builders, Inc. v. Enter. Park Condo. Ass'n, Inc.*, 63 Conn. App. 657, 778 A.2d 237 (2001).................................................................................................29

*Emmelmann v. Am. & Foreign Ins. Co.*, Docket No. CIV.A303CV02144, 2006 U.S. Dist. LEXIS 16286 (D. Conn. Mar. 30, 2006)..........................................................29

*Employer Mut. Ins. Co. v. Nelson*, 361 S.W.2d 704 (Tex. 1962)................................22

*Fantis Foods v. N. River Ins. Co.*, 753 A.2d 176 (N.J. Super. Ct. App. Div. 2000) ...21

*Flint v. Universal Mach. Co.*, 238 Conn. 637, 679 A.2d 929 (1996) ............................9

*Government Employees Ins. Co. v. DeJames*, 261 A.2d 747 (Md. 1970).................22

*Indiana Ins. Co. v. Liaskos*, 697 N.E.2d 398 (Ill. App. Ct. 1998)................................19

*Kim v. State Farm Fire & Cas. Co.*, Docket No. 3:15-cv-879 (VLB), 2015 U.S. Dist. LEXIS 147823 (D. Conn. Oct. 30, 2015)...................................................................31

*Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 643 A.2d 1282 (1994) ...........................33

*Martin v. Am. Equity Ins. Co.,* 185 F. Supp. 2d 162 (D. Conn. 2002) .......................30

*McCarthy v. Travelers Indemnity Company*, Docket No. CV 970345443, 2000 Conn. Super. LEXIS 823 (Conn. Super. Ct. March 29, 2000)............................................28

*McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169 (D. Conn. 2005)..29

*Megna v. United Servs. Auto. Ass'n*, Docket No. CV00439422, 2004 Conn. Super. LEXIS 954 (Conn. Super. Ct. Apr. 13, 2004) (DeMayo, J.) .....................................13

*Mercedes Zee Corp. v. Seneca Ins. Co.*, 2015 U.S. Dist. LEXIS 171253 (D. Conn. Dec. 22, 2015) .................................................................................................................18

*Metsack v. Liberty Mutual Fire Ins. Co.*, No. 3:14-CV-01150 (VLB) (D. Conn. 2015). ....................................................................................................................................35

*Morton v. Great Am. Ins. Co.*, 419 P.2d 239 (N.M. 1966) ...........................................22

*Morton v. Travelers Indem. Co.*, 106 N.W.2d 710 (Neb. 1960) ..................................23

*Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 961 A.2d 387 (2009) .........9

*Nationwide Mut. Fire Ins. Co. v. Tomlin*, 352 S.E.2d 612 (Ga. Ct. App. 1986) ..........22

*Nida v. State Farm Fire & Casualty Co.*, 454 So. 2d 328 (La. App. 3d Cir. 1984) ....11

*Ocean Winds Council of Co-Owners, Inc. v. Auto-Owner Ins. Co.*, 565 S.E.2d 306 (S.C. 2002) ................................................................................................................20

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 352 P.3d 790, 791 (Wash. 2015) ..............................................................................................18, 19

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*, 2016 U.S. App. LEXIS 2036 (9th Cir. Feb. 3, 2016) .................................................................19

*Rancourt v. Allstate Ins. Co.*, Docket No. CV-06-5001222, 2008 Conn. Super. LEXIS 3024 (Conn. Super. Ct. December 1, 2008) (Abrams, J.) ......................................32

*Rapid Park Indus. v. Great Northern Ins. Co.*, Docket No. 09-Civ-8292, 2010 U.S. Dist. LEXIS 115747 (S.D.N.Y. Oct. 1, 2010) ..........................................................11

*Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907 (S.D. Miss. 1998) .........11

*Rogers v. Maryland Cas. Co.*, 109 N.W.2d 435 (Iowa 1961) ......................................22

*Royal Indem. Co. v. Grunberg*, 553 N.Y.S.2d 527 (N.Y. App. Div. 1990) ..................21

*Sports Domain, LLC v. Max Specialty Ins. Co.*, Docket No. CV-09-5025291-S, 2011 Conn. Super. LEXIS 3187 (Dec. 19, 2011) (Hadden, J.) .........................................26

*Thornewell v. Indiana Lumbermens Mut. Ins. Co.*, 147 N.W.2d 317 (Wis. 1967).....22

*Voccola v. Rooney*, 136 F. Sup. 3d 197 (D. Conn. 2015)............................................34

*Vormelker v. Oleksinski*, 199 N.W.2d 287 (Mich. Ct. App. 1972) ..............................22

*Whispering Creek Condo. Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176 (Alaska 1989) ........................................................................................................21

*Wright v. State Farm Mutual Automobile Ins. Co.*, Docket 960561270, 1997 Conn. Super. LEXIS 3122 (Conn. Super. Ct. Nov. 18, 1997) (Aurigemma, J.)................32

*Zoo Props., LLP v. Midwest Family Mut. Ins. Co.*, 797 N.W.2d 779, 782 (S.D. 2011) ....................................................................................................................................21

**Statutes**

Conn. Gen. Stat. § 38a-3816............................................................................32, 33, 35

**Rules**

Fed. R. Civ. P. 56...........................................................................................................8, 24

## INTRODUCTION

Defendant Allstate Insurance Company ("Allstate") insured the home of Plaintiffs Steven and Gail Metsack under annually-renewed policies of homeowners insurance beginning in 1991 and ending in 2009, when Plaintiffs cancelled their Allstate insurance and switched carriers.[1]  Plaintiffs say they first learned in 2014, five years after their last Allstate policy expired, that cracks in their foundation walls, which they had known about for years, resulted from faulty concrete poured when the home was constructed, and were evidence of long-term, progressive deterioration that could be expected to continue. Initially, Plaintiffs sued their current homeowners carrier, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), claiming that the loss was covered under Liberty Mutual's policy, which took effect after Allstate.  However, in March 2015, Plaintiffs made a claim against Allstate, and then joined Allstate to this lawsuit.

The Allstate Policies exclude coverage for cracking of walls or foundations, and also exclude coverage for losses caused by faulty or defective construction materials, both of which, by Plaintiffs' admission, were involved in this loss. But Plaintiffs seek coverage under the "collapse" provision of the Allstate Policies, which extends coverage in certain circumstances to losses arising out of the "entire collapse" of the structure or the "entire collapse" of a

---

[1]  Allstate insured Plaintiffs' Property under separate policies of insurance, each with one year terms, beginning on June 27, 1991 and ending on September 9, 2009, when Plaintiffs cancelled their last Allstate policy.  (DeMeo Decl., Exh. H, Aff. of P. Torres, ¶ 3). Because the relevant terms of coverage under the Allstate policies did not change substantially from June, 1991 to September, 2009, the policies, though covering discrete terms, are referred to collectively as "the Allstate Policies." (DeMeo Decl., Exh. H, Aff. of P. Torres, ¶ 7-9, *Exh. 1-3*).

portion of the structure during the policy period, provided that the collapse is "sudden and accidental." It is undisputed, however, that Plaintiffs home is still standing, that its foundation continues to perform its essential functions of holding back the earth and supporting the house, that its condition does not present a safety hazard, and that Plaintiffs continue to live in the home to this day.

As more fully demonstrated below, Plaintiffs' claims fail for three separate and independent reasons.  First, losses for both cracking of walls and faulty or defective construction materials are specifically excluded under the Allstate Policies. Second, the "collapse" exception to the Policy exclusions does not apply because there was no "collapse" during the Allstate policy period— Plaintiffs' property remains standing, and safe for continued occupancy, almost seven  years after the last Allstate policy expired. Third, even if one were to assume, contrary to fact, that the structure somehow was in a state of "collapse" during Allstate's policy period, there is still no coverage because the deterioration of Plaintiffs' basement walls was not "sudden," as required by the Allstate Policies.  On the contrary, the undisputed evidence is that the process has been gradually occurring over the past quarter century.

Accordingly, Allstate is entitled to judgment as a matter of law on Count IV of Plaintiffs' First Amended Complaint ("Complaint") (Compl., ECF Doc. No. 30, ¶¶ 54-72), which claims that Allstate breached its insurance policy by denying coverage.  Allstate is likewise entitled to judgment as a matter of law on Count V (Compl., ¶¶ 73-83), which alleges breach of the covenant of good faith and fair

- 2 -

dealing in the denial of the claim, because a bad faith claim against an insurer cannot survive when there is no coverage under the policy, and because the undisputed facts do not support an argument that Allstate acted willfully or with malice in connection with Plaintiffs' insurance claim.  At a minimum, this case presents a good faith dispute as to coverage, and where such a dispute exists, an insurer cannot be held liable for bad faith. Allstate is also entitled to summary judgment on Count VI (Compl., ¶¶ 84-99), which  alleges that Allstate violated the Connecticut Unfair Trade Practices Act ("CUTPA") by committing unfair and deceptive claims practices in violation of the Connecticut Unfair Insurance Practices Act ("CUIPA").   Allstate cannot be held liable under CUTPA for a violation of CUIPA when it has not breached its insurance contract, and further, Plaintiffs have adduced no proof, beyond the conclusory allegations of their complaint, that Allstate has engaged in a "general business practice" of wrongfully denying claims in which liability is reasonably clear, in violation of CUIPA.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs have lived at 148 Laurel Lane, Ashford, Connecticut ("the Property") since 1992.  ( Compl., ¶¶ 5-6).  Allstate insured the Property under separate policies of insurance, each with one year terms, beginning on June 27, 1991 and ending on September 9, 2009, when Plaintiffs cancelled their last Allstate policy. (Compl., ¶ 55; DeMeo Decl., Exh. H, Aff. of P. Torres, ¶ 3).  From September 2009 until the present, Liberty Mutual has insured Plaintiffs.  (Compl., ¶6).

- 3 -

Plaintiffs allege that in the Spring of 2014, they noticed water in their basement and, while investigating the source of the water, "noticed a series of horizontal and vertical cracks throughout most of the basement walls of their home." (Compl., ¶¶ 57-58). Plaintiffs claim that they investigated the condition by consulting with various contractors in the Spring of 2014. (Compl., ¶ 59). Plaintiffs claim that in April of 2014, one contractor, Dean Soucy, told them that "the form of 'pattern cracking' found in the basement walls of their home was due to a chemical compound found in certain basement walls constructed in the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company." (Compl. ¶ 60). Plaintiffs allege that the aggregate (i.e. crushed stone) used in the concrete began, over time, to "oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble." (Compl., ¶ 61). Plaintiffs allege that there is no known scientific or engineering method or process to reverse the deterioration. (Compl., ¶ 62). They further allege that "[a]t some point between the date on which the basement walls were poured and the month of April, 2014, the basement walls suffered a substantial impairment to their structural integrity" and that it "is only a question of time until the basement walls of the Metsacks' home will fall in due to the exterior pressure from the surrounding soil." (Compl., ¶¶ 62-63).

On April 14, 2014, Plaintiffs submitted an insurance claim with Liberty Mutual. (Compl., ¶ 17). Liberty Mutual denied the claim on May 12, 2014. (Compl., ¶ 17). On August 8, 2014, Plaintiffs brought this action against Liberty Mutual. (ECF Docket No. 1) It was not until March 3, 2015—several months after they

- 4 -

brought suit against Liberty Mutual and almost a year after the alleged water event in their basement—that Plaintiffs first notified Allstate, whose policy had terminated nearly six years earlier, of the "condition" of their basement walls. (Compl., ¶ 66; DeMeo Decl., Exh. G, Aff. of C. Erskine, ¶¶ 4-5).  Without waiting for Allstate to issue a written decision on their claim[2], Plaintiffs filed a Motion to Amend the Complaint to sue Allstate for breach of contract (Count IV), bad faith (Count V), and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practice Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA) (Count VI).  (Doc. No. 28-29).  In the Complaint, Plaintiffs claim that their loss is covered under the Policy's additional coverage for collapse. (Compl., ¶ 69).

At his deposition on December 3, 2015, Plaintiff Stephen Metsack stated that he had acted as his own general contractor when the house was originally built in 1992.  (DeMeo Decl., Exh. A, S. Metsack Dep. 13:14-17)  Mr. Metsack explained that he had previously worked for various home builders as well as a concrete company in residential construction, and that he considered himself to be quite handy.  (DeMeo Decl., Exh. A, S. Metsack Dep. 13:18-14:10; 24:12-31:25).  Mr. Metsack stated that he first observed interior and exterior cracks in his foundation walls at some point between 1996 and 2008, although he was unsure of the dates and could not identify a specific year.  (DeMeo Decl., Exh. A, S. Metsack Dep. 47:23-48:6; 119:16-120:7)  Plaintiff Gail Metsack testified at her

---

[2] Allstate ultimately denied the claim via letter on March 27, 2015. (DeMeo Decl., Exh. G, Aff. of C. Erskine, ¶ 6)

deposition that she did not recall seeing the cracks before September 2009. (DeMeo Decl., Exh. B, G. Metsack Dep. 11:22-12:2).

At some point before 2010, Mr. Metsack applied a "cover" or "spackle" to several cracks on the foundation by the garage, although again he could not identify a specific date or year. (DeMeo Decl., Exh. A, S. Metsack Dep. 49:9-50:15; 61:22-62:2). Mr. Metsack noted that there are visible cracks today where he put that spackle material down, and that those cracks are bigger than when he originally saw them. (DeMeo Decl., Exh. A, S. Metsack Dep. 55:23-56:5). Mr. Metsack stated that the cracks in the spackling evolved over time, and did not just suddenly re-appear. (DeMeo Decl., Exh. A, S. Metsack Dep. 62:3-17) While the Complaint states that the Plaintiffs "first learned of the existence of [the] substantial impairment" allegedly stemming from the Mottes concrete after the Spring of 2014 water incident, Mr. Metsack clarified in his deposition that Mr. Soucy inspected the property at some point before that incident, and that Mr. Metsack was already aware of the general problems with Mottes concrete prior to Mr. Soucy's visit. (DeMeo Decl., Exh. A, S. Metsack Dep. 78:12-79:23).

Plaintiffs' expert engineering witness, David Grandpre, and Allstate's engineering expert, Leonard Morse-Fortier, both state that the conditions they observed in Plaintiffs' foundation walls are the result of long-term deterioration. (DeMeo Decl., Exh. C, D. Grandpre Dep., 71:17-72:1; DeMeo Decl., Exh. D, D. Grandpre Disclosure, *Exh. A* at pp. 2-3; DeMeo Decl., Exh. E, Aff. of L. Morse-Fortier, ¶ 6, *Exh. B*, pp.4-5). Mr. Morse-Fortier inspected the property on October 12, 2015. (DeMeo Decl., Exh. E, Aff. of L. Morse-Fortier, ¶ 4). Mr. Morse-Fortier

- 6 -

says that the conditions at the Property are the result of long-term progressive deterioration of the foundation walls as the result of pyrrhotite, a reactive iron sulfide contained in the originally poured concrete aggregate. (DeMeo Decl., <u>Exh. E</u>, Aff. of L. Morse-Fortier, ¶ 6). Oxidation of the reactive materials, which is triggered by exposure to air and water, occurs over an extended period of time. (DeMeo Decl., <u>Exh. E</u>, Aff. of L. Morse-Fortier, ¶ 6). Mr. Morse-Fortier's conclusions were verified when Nick Scaglione, a petrographer who is an expert in concrete analysis, confirmed that cores drilled from Plaintiffs' foundation walls contain iron sulfide materials, principally pyrrhotite, and that the cracking in the concrete relates to the "oxidation of the iron sulfide materials within the aggregates." (DeMeo Decl., <u>Exh. I</u>, Disclosure of N. Scaglione, *Exh. A* at p. 4).

Although expansion and cracking has caused damage to the foundation, the condition of the foundation walls has not made the Property unsafe for continued use as a home by its occupants. (DeMeo Decl., <u>Exh. C</u>, D. Grandpre Dep., 50:19-51:3; DeMeo Decl., <u>Exh. E</u>, Aff. of L. Morse-Fortier, ¶ 8). The foundation walls have not fallen down or caved in, and they continue to perform their essential function of supporting the house above and retaining the soil outside. (DeMeo Decl., <u>Exh. E</u>, Aff. of L. Morse-Fortier, ¶ 7; DeMeo Decl., <u>Exh. C</u>, D. Grandpre Dep., 44:4-13; 50:23-51:3, 52:9-17). At the time he inspected the Property, Mr. Morse-Fortier observed nothing to suggest that the Property or any part of it was about to fall down or cave in. (DeMeo Decl., <u>Exh. E</u>, Aff. of L. Morse-Fortier, ¶ 7). Both Plaintiffs testified that they continue to live in the house the way that they have always lived, including celebrating holidays at the house.

- 7 -

(DeMeo Decl., Exh. A, S. Metsack 57:12-23; 97:4-12; DeMeo Decl., Exh. B, G. Metsack Dep. 12:23-13:1).  Mr. Metsack stated that Plaintiffs continue to use all of the areas of the house, including the unfinished basement. (DeMeo Decl., Exh. A, S. Metsack Dep., 57:12-23).  Plaintiffs also testified that no one has told them that their home is unsafe, in imminent danger of collapse, or that it is unsuitable for occupancy as a single-family home. (DeMeo Decl., Exh. A, S. Metsack Dep. 57:27-58:6; DeMeo Decl., Exh. B, G. Metsack Dep.  48:18-23).

## APPLICABLE LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."  Summary judgment must be granted when the pleadings and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986).  Although the movant carries the initial burden to demonstrate the absence of a genuine issue of material fact, once that burden is met, the opposing party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986).  "A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up,

are not sufficient." *Censor* v. *ASC Techs. of Conn., LLC*, 900 F. Sup. 2d 181, 192 (D. Conn. 2012).

Construction of an insurance policy is a question of law for the court. *Flint v. Universal Mach. Co.*, 238 Conn. 637, 642, 679 A.2d 929 (1996). The parties' intent with respect to the insurance policy is to be "derived from the four corners of the policy," and, where the policy language is unambiguous, the "policy words must be accorded their natural and ordinary meaning . . . ." *Community Action v. American Alliance Insurance Company,* 254 Conn. 387, 399, 757 A.2d 1074 (2000). "In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." *Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 89, 961 A.2d 387 (2009); *see also Buell Indus. v. Greater N.Y. Mut. Ins. Co.*, 259 Conn. 527, 539, 791 A.2d 489 (2002) ("There is no presumption that language in insurance contracts is inherently ambiguous.").

## LEGAL ARGUMENT

I.  ALLSTATE DID NOT BREACH THE CONTRACT BECAUSE THE CLAIMED LOSS CONSISTS OF CRACKING DAMAGE TO WALLS CAUSED BY DEFECTIVE CONCRETE, AND IS NOT WITHIN THE POLICIES' COVERAGE GRANT

Allstate has no duty to provide coverage for the Plaintiffs' claimed loss because it is not covered under the plain and unambiguous terms of the Allstate Policies. The Allstate Policies only cover "sudden and accidental direct physical loss" to covered property. Losses caused by expansion or cracking of walls, or defective construction materials, are specifically excluded under the Allstate Policies. Losses caused by collapse are also

excluded, except as provided under limited additional coverage  for certain "sudden and accidental" losses due to an "entire collapse." As the undisputed facts establish, however, there was no "collapse" in this case under the standards set forth in *Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 532 A.2d 1297, 1300 (1987).  Moreover, even if there were a collapse, the undisputed facts establish that it was not a "sudden" event, as the Policy requires.  Accordingly, there is no coverage, and no breach of contract.

### A.  Loss Consisting of or Caused By Cracking Of Walls Is Excluded Under The Policies.

Under *Losses We Do Not Cover Under Coverages A and B,* the Allstate Policies provide, in relevant part:

> *[W]e do not cover loss consisting of or caused by any of the following:*
>
> *15.*
>
> * * *
>
> > *g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;*
>
> * * *

(DeMeo Decl., <u>Exh. I</u>, Aff. of P. Torres, *Exh. 1* at p. 7, *Exh. 2* at p. 7, and *Exh. 3* at pp. 8-9[3]).

Plaintiffs' claimed loss consists of "pattern cracking" in the foundation walls of the Property, caused by the expansion of aggregate within the concrete.

---

[3]The formatting of Form AU1774 is slightly different, and the relevant portion can be found at subsection 13(f).

(Compl., ¶¶ 11, 23, 60, 72).  Such a claim falls squarely within the exclusion for "settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls . . ." (DeMeo Decl., <u>Exh. H</u>, Aff. of P. Torres, *Exh. 1* at p. 7, *Exh. 2* at p. 7, and *Exh. 3* at pp. 8-9).  *See Rapid Park Indus. v. Great Northern Ins. Co.*, Docket No. 09-Civ-8292, 2010 U.S. Dist. LEXIS 115747, *19-21 (S.D.N.Y. Oct. 1, 2010) (deterioration and sagging of concrete floor of parking garage fell within exclusion for "settling [and] cracking. . . of paved or concrete surfaces. . . ."); *Boston Co. Real Estate Counsel v. Home Ins. Co.*, 887 F. Supp. 369, 373 (D. Mass. 1995) (interpreting exclusion identical to those in Allstate Policies to preclude coverage for building settlement caused by improper site preparation); *Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 913 (S.D. Miss. 1998) (cracking of concrete foundation excluded, applying identical exclusion as in this case); *Nida v. State Farm Fire & Casualty Co.*, 454 So. 2d 328, 335 (La. App. 3d Cir. 1984) (foundation damage caused by expansion and contraction of soil excluded from coverage under settlement exclusion).

### B.  <u>Loss Caused By Defective Materials Used In Construction Is Not Covered Under The Policies.</u>

Plaintiffs claim that their loss is caused by "a chemical compound," found in the aggregate of the concrete used to construct the foundation walls of the Property, that causes oxidation and cracking (Compl., ¶¶ 11-12, 60-61).  In *Losses We Do Not Cover Under Coverages A and B*, the Allstate Policies from 1994 to

- 11 -

2009[4] provide, in relevant part:

> *In addition, we do not cover loss consisting of or caused by any of the following:*
>
> \* \* \*
>
> *22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:*
>
> \* \* \*
>
> *b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*

---

[4] In the Allstate Policies in effect from 1991 to 1994, this provision was worded slightly differently and provided as follows:

> *We do not cover loss to the property described in the Dwelling Protection coverage resulting in any manner from:*
>
> \* \* \*
>
> *7. One or more, of the items listed below, if that item is one of two or more causes of a loss and if the other cause(s) of the loss is (are) excluded by this policy;*
>
> \* \* \*
>
> *b) Defect, Weakness, inadequacy, fault or unsoundness in:*
>
> > *1) planning, zoning, development, surveying, siting; or*
> >
> > *2) design, specifications, workmanship, construction, grading, compaction; or*
> >
> > *3) materials used in construction or repair: or*
> >
> > *4) maintenance*
>
> *of any property including, but not limited to, land, structures, or improvements of any kind, whether on or off the residence premises.*

(DeMeo Decl., <u>Exh. H</u>, P. Torres Aff., *Exh. 3* at p. 8).

> *c) materials used in repair, construction, renovation or remodeling; or*
>
> *d) maintenance;*
>
> *of property whether on or off the residence premises by any person or organization.*

(DeMeo Decl., <u>Exh. H</u>, Aff. of P. Torres, *Exh. 1* at p. 8, and *Exh. 2* at p. 7).

By Plaintiffs' admission, their claimed loss is the result of faulty or defective materials used in the construction of the basement walls of the Property.  Thus, Plaintiffs' loss is not covered under the Allstate Policies, unless the Additional Coverage for Collapse applies. *See Edmond v. Hartford Ins. Co.,* Docket No. 3:98 CV 1653, 2008 U.S. Dist. LEXIS 15825, *15-16 (D. Conn. Mar. 3, 2008) (evidence showed that damage to home caused by faulty original construction, and therefore not covered under exclusion substantively identical to one at issue here)*; Megna v. United Servs. Auto. Ass'n*, Docket No. CV00439422, 2004 Conn. Super. LEXIS 954, *4-5 (Conn. Super. Ct. Apr. 13, 2004) (DeMayo, J.) (damage caused by malfunctioning boiler fell within scope of faulty design, specifications and workmanship exclusion); *Bell Power Sys. v. Hartford Fire Ins. Co*., Docket No. CV 92 0065538, 1995 Conn. Super. LEXIS 448, *14 (Conn. Super. Ct. Feb. 15, 1995) (Aurigemma, J.) (contractor's failure to seal inlet and outlet holes in oil tank that later leaked constituted a "deficiency in design, specifications or workmanship" within policy exclusion).

**II.   PLAINTIFFS CANNOT NEGATE THE APPLICATION OF THESE EXCLUSIONS OR ESTABLISH ANY BREACH BY RELYING ON THE ADDITIONAL COVERAGE FOR "COLLAPSE" BECAUSE THERE WAS NO COLLAPSE DURING THE ALLSTATE POLICY PERIOD.**

To avoid the clear exclusions for loss caused by "settling, cracking, shrinking, bulging or expansion of. . . walls," and "faulty, negligent, inadequate or defective . . . materials . . . used in . . . construction," Plaintiffs claim that their claimed loss is covered as a "collapse" caused by "hidden decay of the building structure" or "defective methods or materials used in construction, remodeling or renovation." (Compl., ¶ 69).    As demonstrated below, however, no covered "collapse" occurred during Allstate's policy period.[5]

The Allstate Policies generally exclude coverage for collapse, except as provided under Section I—Additional Protection—Collapse. (DeMeo Decl., <u>Exh. H</u>, Aff. of P. Torres, *Exh. 1* at 7, *Exh. 2* at 6, and *Exh. 3* at 8).  Section 1, Paragraph 11 provides that:

> *We will cover:*
>
>> a) *the entire collapse of a covered building structure;*
>>
>> b) *the entire collapse of part of a covered building structure; and*
>>
>> c) *direct physical loss to covered property caused by (a) or (b) above.*
>
> *For coverage to apply, the collapse of a building structure specified in (a) or (b)   above <u>must be a sudden and accidental direct physical loss</u> caused by one or more of the following:*

---

[5] The Allstate Policies in in effect between 1994 and 2009 apply "only to losses or occurrences that take place during the policy period";  (DeMeo Decl., <u>Exh. H</u>, P. Torres Aff., *Exh. 1* at p. 4, *Exh. 2* at p. 3); and the Allstate Policies in in effect between 1991 and 1994 apply "only for loss occurring during the policy period." (DeMeo Decl., <u>Exh. H</u>, P. Torres Aff., *Exh. 3* at p. 15).

\* \* \*

    *b) hidden decay  of the building structure;*

\* \* \*

    *f) defective methods or materials used in construction, repair, remodeling or renovation.*

*Collapse does not include settling, cracking, shrinking, bulging or expansion.*

**(DeMeo Decl., <u>Exh. H</u>, Aff. of P. Torres, *Exh. 1* at 15, *Exh. 2* at 14, and *Exh. 3* at 17) (emphasis added.).**

The Policies' limited collapse coverage is an exception to the Policies' general exclusion for collapse.  "The burden of proving that an exclusion applies is on the insurer, but the insured has the burden of proving that an exception to an exclusion reinstates coverage." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 788, 67 A.3d 961 (2013), citing *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 551, 791 A.2d 489 (2002).  Therefore, Plaintiffs bear the burden of proving that there is coverage for their claimed loss under the Additional Coverage for Collapse.

Plaintiffs cannot show that their home, or any portion of it, suffered a covered "collapse" during Allstate's policy period. It is undisputed that the home remains standing and that even today, seven years after the Policies expired, all portions of Plaintiffs' property remain fully habitable, and the foundation walls continue to perform their essential functions of supporting the house and retaining the soil.

The Policies expressly provide that to be covered, there must be an "entire collapse" of the structure or a portion thereof, and that the collapse must be "sudden and accidental." (DeMeo Decl., Exh. H, Aff. of P. Torres, *Exh. 1* at 15, *Exh. 2* at 14, and *Exh. 3* at 17). There was certainly no "entire collapse" here, nor was there any "sudden" event. Plaintiffs' own expert structural engineer, David Grandpre, has acknowledged that the alleged deterioration of the basement walls has progressed gradually over the last 24 years and that, even today, the deterioration has not reached the point where the safety of the structure is compromised. (DeMeo Decl., Exh. C, D. Grandpre Dep., 50:23-51:3; 65:20-24; 106:3-5).   Moreover, Mr. Grandpre has recognized that the cracking of the concrete in Plaintiffs' foundation walls is not a sudden event. (DeMeo Decl., Exh. C., D. Grandpre Dep., 48:11-48:17, 75:6-75:9).  According to Mr. Grandpre, the foundation walls are "still holding up the house" and "still holding back the soil;" the house is "still safe to live in;" and there is no "imminent danger" of any wall "caving in and falling."  (DeMeo Decl., Exh. C, D. Grandpre Dep., 50:23-51:3; 106:3-5).

Allstate has found no case imposing liability on a homeowners carrier for supposed "collapse" in circumstances even remotely similar to those presented here, where the home remains standing and fit for continued occupancy seven years after expiration of the homeowners policy. The Connecticut Supreme Court's only decision on the meaning of the term "collapse" in a property insurance policy is *Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246 (1987). In *Beach*, the uncontested facts were that there was a nine-inch wide crack in the

north foundation wall of the house, "wooden support beams on top of the foundation wall had pulled apart," and "the foundation wall had tipped over into the basement from the top and was no longer supporting the house." *Id.* at 248 (emphasis added). The trial court concluded that the house "was in imminent danger of falling over . . . ." *Id.* at 249 (emphasis added). On these facts, the Connecticut Supreme Court concluded that the trial court had properly held that a "collapse" occurred because "[a]lthough the judicial decisions elsewhere are divided, the more persuasive authorities hold that the term 'collapse' is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." *Id.* at 252.

This case does not involve the type of "substantial impairment of the structural integrity of a building" that the Connecticut Supreme Court found constituted a "collapse" in *Beach*. In *Beach*, the plaintiffs' house was caving in on itself, creating an immediate safety hazard. Here, unlike *Beach*, Plaintiffs' expert does not claim that the support beams of Plaintiffs' house have pulled apart, or that the foundation of their property is "no longer supporting the house," or that their house or any part of it is "in imminent danger of falling over . . . ." *Beach*, 205 Conn. at 248-49. To the contrary, as noted above, he has testified that the foundation walls of Plaintiffs' property continue to perform their intended function, there is no imminent danger of a wall caving in, and the house remains safe to occupy. (DeMeo Decl., Exh. C, D. Grandpre Dep., 50:23-51:3; 106:3-5).

In determining whether the conditions at Plaintiffs' home constituted a "collapse" during Allstate's policy period, this Court must predict how the

- 17 -

Connecticut Supreme Court would rule. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 610 (2d Cir. 1996); *Mercedes Zee Corp. v. Seneca Ins. Co.*, 2015 U.S. Dist. LEXIS 171253, *6 (D. Conn. Dec. 22, 2015).   The Court should predict that the Connecticut Supreme Court would, consistent with the strong weight of authority nationwide, conclude that a "substantial impairment of structural integrity" occurs only where: (1) the structure is unfit for its function or unsafe; or (2) the structure is in imminent danger of falling down.

Since *Beach* was decided in 1987, subsequent appellate decisions in other jurisdictions, many of them relying in part on *Beach*, have refined and explained the "substantial impairment of structural integrity" test for a collapse. Most recently, the Washington Supreme Court explained that a "collapse" occurs when there is a "substantial impairment of the structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe," and, where the policy language so provided, the damage "must be more than mere settling, cracking, shrinkage, bulging, or expansion."[6] *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 352 P.3d 790, 791 (Wash. 2015) (en banc) (emphasis added). In other words, there must be "an impairment so severe as to materially impair a building's ability to remain upright . . . ." *Id.* at 794 (emphasis added). Applying this standard, the Ninth Circuit held that it was "simply implausible" that condominium walls had "collapsed" when a

---

[6] As in *Queen Anne*, the Allstate Policies provide that "[c]ollapse does not settling, cracking, shrinking, bulging or expansion." (DeMeo Decl., Exh. H, P. Torres Aff., *Exh. 1* at 15, *Exh. 2* at 14, and *Exh. 3* at 17)  Thus, as *Queen Anne* explained, and consistent with *Beach*, a "collapse" must be more than mere cracking, bulging or expansion of foundation or basement walls.

1998 insurance policy was in effect, given that the condominiums were still standing in 2015. *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*, 2016 U.S. App. LEXIS 2036, *4 (9th Cir. Feb. 3, 2016); *see also Indiana Ins. Co. v. Liaskos*, 697 N.E.2d 398, 405 (Ill. App. Ct. 1998) (finding no collapse where "[t]he evidence did not show that the basement foundation wall had moved and separated from the rest of the foundation, that it was <u>no longer supporting the [insured's] home</u> or that its movement caused [the insured's] home to be <u>uninhabitable</u>") (emphasis added).

In  this case, like *Queen Anne*, it is "simply implausible" that Plaintiffs' foundation walls "collapsed" during an Allstate policy period that ended in 2009, when they are still standing and performing their intended function seven years later.   *See also Am. Econ. Ins. Co. v. CHL, LLC,* 2016 U.S. Dist. LEXIS 88286 at * 10 (W.D. Wash. July 7, 2016) (applying *Queen Anne* "substantial impairment" standard, where apartment complex remained standing and occupied in 2014 when alleged "hidden decay" discovered, it was "implausible" that it could have been in a state of collapse during policy periods that expired in 2002).

Other state appellate courts have required that a collapse be either an actual or imminent falling down. A leading case requiring such imminence is *Doheny West Homeowners' Ass'n v. American Guar. & Liab. Ins. Co.*, 70 Cal. Rptr. 2d 260 (Cal. Ct. App. 1997), which explained that requiring that a collapse be either actual or imminent "avoids both the absurdity of requiring an insured to wait for a seriously damaged building to fall and the improper extension of

coverage beyond the terms of the policy," and also "avoid[s] converting th[e] insurance policy into a maintenance agreement . . . ." *Id.* at 264.

*Doheny West* extensively surveyed the case law nationwide on collapse under property insurance policies, explaining that those cases referring to a "substantial impairment of structural integrity" are cases that "either implicitly or explicitly require that collapse be imminent and inevitable, or all but inevitable." *Id.* at 264. The court considered *Beach*, and explained that *Beach* was "decided on facts that indicate imminent danger and a degree of damage that indicates that the building will not stand." *Id.* at 265. The *Doheny West* court defined "imminent" as "likely to happen without delay; impending, threatening," and noted that cases finding an imminent collapse were ones where there was an "immediate danger," or "imminent danger and a degree of damage that indicates that the building will not stand." *Id.* at 264-65. The court found no such evidence in the case before it because a structural engineer testified that the building was safe, not in danger of falling down, and "despite the damage, the beams and other supports were capable of supporting the building." *Id.* at 266.

The South Carolina Supreme Court reached a similar result, explaining that "We find a requirement of <u>imminent collapse</u> is the most reasonable construction of the policy clause covering 'risks of direct physical loss involving collapse.' We define imminent collapse to mean collapse is <u>likely to happen without delay</u>. This construction protects the insured without distorting the purpose of the clause to protect against damage from collapse." *Ocean Winds Council of Co-Owners, Inc. v. Auto-Owner Ins. Co.*, 565 S.E.2d 306, 308 (S.C. 2002) (emphasis added). *See*

- 20 -

*also Zoo Props., LLP v. Midwest Family Mut. Ins. Co.,* 797 N.W.2d 779, 782 (S.D. 2011) (following *Ocean Winds* and requiring an "imminent collapse," i.e., a collapse that is "likely to happen without delay"); *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d 166, 174 (Pa. 2005) (requiring a "falling down, or <u>imminent</u> falling down of a building or part thereof") (emphasis added); *Fantis Foods v. N. River Ins. Co.*, 753 A.2d 176, 183 (N.J. Super. Ct. App. Div. 2000) (collapse means a "<u>serious impairment of structural integrity</u> that connotes <u>imminent collapse threatening the preservation of the building as a structure</u> or the <u>health and safety</u> of occupants and passers-by") (emphasis added); *Royal Indem. Co. v. Grunberg*, 553 N.Y.S.2d 527, 529 (N.Y. App. Div. 1990) (collapse occurred where "[t]he uncontradicted record evidence is that the house was in <u>imminent danger</u> of caving in") (emphasis added); *Whispering Creek Condo. Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176, 180 (Alaska 1989) (collapse coverage applied where condominium complex was in a "<u>life-threatening condition</u> and in <u>imminent danger</u> of collapse") (emphasis added).

Furthermore, <u>all</u> of the cases from other jurisdictions that the Connecticut Supreme Court relied upon in *Beach* found "substantial impairment of structural integrity" to require that the structure is unfit for its function or unsafe, or in imminent danger of falling down. *See Auto Owners Ins. Co. v. Allen*, 362 So. 2d 176, 177 (Fla. Dist. Ct. App. 1978) (finding a collapse where "the function of the wall and building (including the function of the superstructure) was impaired and the total building. . . was in <u>imminent danger</u> of falling further") (emphasis added); *Nationwide Mut. Fire Ins. Co. v. Tomlin*, 352 S.E.2d 612, 614 (Ga. Ct. App.

- 21 -

1986) (finding a collapse where "[t]he exterior brick walls of the house have cracked and pulled away from the structure") (emphasis added); *Vormelker v. Oleksinski*, 199 N.W.2d 287, 293 (Mich. Ct. App. 1972) (approving jury instruction defining "collapse" as "a sinking, bulging, cracking, pulling away of the wall so as to impair its function of supporting the superstructure and destroying its efficiency as a habitation"); *Government Employees Ins. Co. v. DeJames*, 261 A.2d 747, 750 (Md. 1970) (finding sufficient evidence to establish collapse where engineer testified that building was unsafe and unfit to be occupied); *Thornewell v. Indiana Lumbermens Mut. Ins. Co.*, 147 N.W.2d 317, 320 (Wis. 1967) ("If the condition of the part of the building claimed to be in a state of collapse is such that the basic structure or substantial integrity of the part is materially impaired so that it cannot perform its structural function as a part of the building and is in immediate danger of disintegrating, then it can be said to be in a state of collapse within the meaning of the extended coverage of the policy.") (emphasis added); *Morton v. Great Am. Ins. Co.*, 419 P.2d 239, 240 (N.M. 1966) (finding that whether there was a collapse was an issue of fact where first floor of house "had tilted about ten degrees from vertical" and "wide cracks occurred in the walls," creating an "unsafe and dangerous condition"); *Employer Mut. Ins. Co. v. Nelson*, 361 S.W.2d 704, 709 (Tex. 1962) (defining "collapse" as "a sinking, bulging, breaking or pulling away of the foundation or walls or other supports so as materially to impair their function and to render the house unfit for habitation") (emphasis added); *Rogers v. Maryland Cas. Co.,* 109 N.W.2d 435, 438 (Iowa 1961) (affirming jury verdict finding collapse where "[t]he jury could find [the building's]

- 22 -

basic structure was materially impaired and it was <u>dangerous to occupy</u>") (emphasis added); *Morton v. Travelers Indem. Co.*, 106 N.W.2d 710, 715-16 (Neb. 1960) (collapse occurred where testimony was that basement walls "had lost any holding power" and "it looked like total collapse could happen any time").[7]

The situation in this case is a far cry from those in the cases cited above, where massive structural damage has created an immediate safety hazard that impairs the ability of the structure to remain upright.  Plaintiffs' own expert admits that, even today, Plaintiffs' property remains safe and fit for occupancy, and that the basement walls continue to support the structure.  (DeMeo Decl., <u>Exh. C,</u> D. Grandpre Dep., 50:23-51:3; 106:3-5).  Taking Plaintiffs' own evidence in the light most favorable to them, the very most that can be concluded is that the foundation walls have been slowly deteriorating for the last 24 years and will probably continue to do so, but that no catastrophic structural failure is imminent – and certainly none was imminent in 2009, when Plaintiffs cancelled their most recent Allstate Policy.  In short, with the home still standing, fully occupied, and presenting no imminent threat of structural failure seven years after the expiration of the Allstate Policies, there is simply no evidence to support Plaintiffs' contention that a covered "collapse" occurred during the policy period 1991-2009, and no genuine issue of material fact for trial.  Accordingly, Allstate is

---

[7] Notably, *Bacewicz v. NGM Insurance Co.*, No. 3:08-CV-1530 (JCH), 2010 U.S. Dist. LEXIS 77682 (D. Conn. Aug. 2, 2010), also dealt with an imminent collapse situation. In denying the defendant insurer's motion for summary judgment on "collapse," the court noted that the plaintiffs immediately commenced replacement of their foundation walls after a structural engineer "concluded that the concrete basement walls would be unable to safely support the weight of the house." *Id.* at *5.

entitled to judgment as a matter of law and summary judgment should be entered in Allstate's favor.  Fed. R. Civ. P. 56.

## III. EVEN ASSUMING, CONTRARY TO THE EVIDENCE, THAT A COLLAPSE OCCURRED DURING ALLSTATE'S POLICY PERIOD, THERE IS STILL NO BREACH BECAUSE ANY COLLAPSE WAS NOT "SUDDEN AND ACCIDENTAL" AS REQUIRED BY THE POLICY.

The plain and unambiguous language of the Allstate Policies require that for coverage to apply under the Additional Coverage of Collapse, the "entire collapse" of a building structure or portion thereof "must be a _sudden_ and accidental direct loss" caused by one of six named perils.  (Emphasis added.) DeMeo Decl., Exh. H, Aff. of P. Torres, *Exh. 1* at 15, *Exh. 2* at 14, and *Exh. 3* at 17).

The Connecticut Supreme Court has held that the term "sudden," in the context of an insurance policy, means "temporally abrupt." *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. at 540.  In *Buell*, the Court was asked to interpret the meaning and applicability of the "sudden and accidental" exception to the pollution exclusion in the defendant insurers policies. *Id.* at 529. The plaintiff insured had sought coverage from the defendants for contamination discovered at its properties in 1990 caused by releases of pollutants that had occurred during and after 1966. *Id.* at 530. The plaintiff, on appeal, challenged the lower court's holding that "there exists no genuine issue of material fact that any of the discharges were, as required by the insurance policies, 'sudden.'" *Id.* at 535. The plaintiff insureds argued that the term "sudden" meant "unexpected," not necessarily quick and abrupt, and that if the pollutant releases over the years were *unexpected* and accidental, the policies should provide coverage. *Id.* at 536. The Connecticut Supreme Court disagreed, holding that the term "sudden"

- 24 -

requires that the release "occurs quickly or happens abruptly." *Id.* The Court rejected the plaintiffs' argument that the term "sudden" was ambiguous because some dictionary definitions of the term "in certain circumstances, include a sense that the event being described occurred unexpectedly." *Id.* at 546. The Court noted that "[t]he existence of more than one dictionary definition is not the sine qua non of ambiguity. If it were, few words would be unambiguous." *Id.* The Court held that *"[w]e cannot reasonably call 'sudden' a process that occurs slowly and incrementally over a relatively long time*, no matter how unexpected or unintended the process." *Id.* at 544 (emphasis added; internal quotation omitted).

Even assuming, contrary to fact, that the Property suffered a "collapse" during the Allstate policy period, there is still no coverage because the undisputed facts establish that the deterioration of the basement walls has been a gradual process occurring over the last 24 years, and not a "sudden" – defined by the Connecticut Supreme Court in *Buell* as "quick" or "abrupt" -- event. Plaintiffs' expert, David Grandpre, opined in both his report and his deposition that the deterioration of the Plaintiffs' foundation was not a sudden process. (DeMeo Decl., Exh. C, D. Grandpre Dep., 48:6-17; DeMeo Decl., Exh. D, D. Grandpre Disclosure, *Exh. A* at pp. 3-4). Specifically, when Mr. Grandpre was asked during his deposition whether he agreed with Liberty's expert's assessment of the Property, he testified as follows:

> Q "None of the cracks observed are due to an isolated or sudden event." Do you agree with that statement?
>
> A Yes.

(DeMeo Decl., <u>Exh. C,</u> D. Grandpre Dep., 75:6-9).  Allstate's engineering expert, Leonard Morse-Fortier, agrees with Plaintiffs' expert that the cracking in Plaintiffs' foundation walls is the result of a gradual, decades-long process of oxidation, expansion, and cracking caused by the interaction of air and water with iron-sulfide bearing minerals in the concrete.  (DeMeo Decl., <u>Exh. F,</u> Morse-Fortier Aff., ¶ 6).  Plaintiff Stephen Metsack confirmed that the cracking in the foundation walls did not suddenly appear, and that that he observed the cracks evolving over time.  (DeMeo Decl., <u>Exh. A,</u> S. Metsack Dep. 62:13-17; 67:10-15).  Plaintiffs observed and repaired concrete cracks years before they made a claim with Allstate.  (DeMeo Decl., <u>Exh. A,</u> S. Metsack Dep. 48:23-50:15; 119:16-21). Likewise, Plaintiff Gail Metsack testified that what happened with respect to their basement was not sudden, and testified that many of the interior damages that she associated with the cracks to the foundation walls had existed for a number of years.  (DeMeo Decl., <u>Exh. B,</u> G. Metsack Dep. 23:7-9; 36:15-19).  As Plaintiffs' expert acknowledged, the defects in the concrete that caused it to expand and crack existed from the initial concrete pour in 1992, and gradually worsened over decades. (DeMeo Decl., <u>Exh. C,</u> D. Grandpre Dep., 71:17-72:1).  Under Connecticut law, "a process that occurs slowly and incrementally over a relatively long time" cannot be considered "sudden."  *Buell*, 259 Conn. at 544; see *also Sports Domain, LLC v. Max Specialty Ins. Co.*, Docket No. CV-09-5025291-S, 2011 Conn. Super. LEXIS 3187 at * 7 (Dec. 19, 2011) (Hadden, J.) (sagging of inflatable dome did not constitute "*abrupt* falling down" under policy defining collapse as "abrupt falling down or caving in of a building or any part of a building. . . .").

- 26 -

In *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.,* 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.,* 434 F. App'x 579 (9th Cir. 2011), a case involving a claimed collapse, the Oregon federal district court interpreted the term "sudden" consistent with the Connecticut Supreme Court's opinion in *Buell.* ) Interpreting policy language very similar to Allstate's,[8] the court held that a claim arising from water damage and decay occurring over time was not within the policy's additional coverage for collapse, which provided in relevant part: "We insure only for direct physical loss to covered property involving the *sudden*, *entire* collapse of a building or any part of a building." *Id.* at 1161 (emphasis added).  Like the Connecticut Supreme Court in *Buell,* the court found that the term "sudden" "has a temporal element in the context of a collapse endorsement and necessarily means 'abrupt,' thus precluding a gradual 'collapse' such as that alleged by the plaintiff." *Id.* at 1163. The court held:

> Given the context of the Policy, I find persuasive defendant's argument that "sudden" in the collapse coverage clause has a temporal element. I thus interpret "sudden" in this context to mean "marked by or manifesting abruptness or haste" or "made or brought about in a short time." Merriam-Webster's Collegiate Dictionary 1248 (11th ed. 2004). Accordingly, conditions that gradually lead to collapse are excluded under the Policy, and only "sudden" collapses are covered under the extension of coverage for collapse. Given the undisputed facts that any "collapse" at Nestani resulted from water damage and decay "occurring over a period of time," this "collapse" was not "sudden" under the terms of the

---

[8] The policy in *Nestani* provided: "We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building." *Id.* at 1161.  As in this case, the collapse had to be caused by certain specified perils, including "hidden decay," the peril that Plaintiffs claim triggered the collapse.

Policy. Plaintiff's claimed loss therefore does not meet the terms of the extension of coverage for collapse.

*Id.; see also Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.,* Docket No. 1:07-CV-01756, 2010 U.S. Dist. LEXIS 129077, *23-24 (M.D. Pa. Aug. 31, 2010) (policy that covered "sudden" sinkhole collapse did not apply where plaintiff's own consultant stated that damage was progressive and connected to long-term defects).

## IV. ALLSTATE DID NOT BREACH THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### A. Because Allstate Is Entitled To Summary Judgment As To The Breach Of Contract Count, It Is Also, As A Matter Of Law, Entitled To Summary Judgment As To The Bad Faith Count

In Connecticut, numerous courts have recognized that when an insurer is found to have no obligation to pay under its policy, its refusal to do so cannot provide the basis for a claim of bad faith. See, e.g., *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 798, 67 A.3d 961 (2013) ("[B]ad faith is not actionable apart from a wrongful denial of a benefit under the policy. . . ."); *Ridley v. National Union Fire Ins. Co. of Pittsburgh*, Docket No. 3:11-CV-1713-WWE, 2014 U.S. Dist. LEXIS 99246 (D. Conn., July 22, 2014) (granting summary judgment as to plaintiff's bad faith count based upon finding that insurer did not breach insurance policy); *Chorches v. Stewart Title Guaranty Co.*, 48 F. Supp. 3d 151, 157 (D. Conn. 2014) ("Because plaintiff's contract claim fails, so too does his claim of bad faith denial of coverage."); *McCarthy v. Travelers Indemnity Company*, Docket No. CV 970345443, 2000 Conn. Super. LEXIS 823 at *25-30 (Conn. Super. Ct. March 29, 2000) (Melville, J.) (noting that numerous trial courts have held that

a plaintiff must show that she is entitled to recover under an insurance policy before the insurer can be found to have acted in bad faith). Given the foregoing case law, if the Court grants summary judgment in Allstate's favor as to the breach of contract claim in Count IV of the Complaint, as a matter of law, it should also grant summary judgment as to Count V, alleging breach of the implied covenant of good faith and fair dealing.

### B. Alternatively, There Is No Evidence In The Record To Support Plaintiffs' Bad Faith Claim

In order to have acted in bad faith, a defendant must have "engaged in conduct designed to mislead or to deceive . . . or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties." (Citation omitted; internal quotation marks omitted). *Elm St. Builders, Inc. v. Enter. Park Condo. Ass'n, Inc.*, 63 Conn. App. 657, 667-68, 778 A.2d 237 (2001); *see also De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382 (2004).  Absent a wrongful denial of a benefit under the Policy, there can be no action for bad faith.  *Capstone Building Corp.*, *supra*, 308 Conn. at 794-98.   "Allegations of a mere coverage dispute or a negligent investigation by an insurer will not state a claim for bad faith. . . . Thus, a plaintiff cannot recover for bad faith if the insurer denies a claim that is 'fairly debatable,' i.e., if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim." *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005) (citation omitted); *see also Emmelmann v. Am. & Foreign Ins. Co.*, No. 3:03CV02144, 2006 U.S. Dist. LEXIS 16286 at *7 (D. Conn. Mar. 30, 2006), *citing Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D.

Conn. 2002) ("[A] mere coverage dispute or negligence by an insurer in conducting an investigation . . . is not sufficient to state a claim of bad faith against an insurer.")

Plaintiffs own testimony establishes that Allstate did not possess the malicious intent required for a finding of bad faith.   At her deposition, Ms. Metsack directly was asked whether Allstate did "anything to mislead [her] in the way it handled this claim," to which she responded "[t]hey did not mislead me, no."  (DeMeo Decl., Exh. B, G. Metsack Dep. 50:3-50:5).  Mr. Metsack was asked the same question at his deposition, and he similarly answered "Mislead, no, I don't think we were misled."  (DeMeo Decl., Exh. A, S. Metsack Dep. 104:1-10). Accordingly, Plaintiffs have no evidence to support their assertion that Allstate "acted intentionally to mislead the Metsacks" during the claim handling process. (Compl. ¶ 79).

Moreover, the undisputed evidence establish that Allstate has a justifiable reason for denying Plaintiffs claim and maintaining its current position regarding coverage.  As noted above, Plaintiffs claimed loss consists of "pattern cracking" in the foundation walls of the Property allegedly caused by the expansion of aggregate within the concrete.  (Compl.¶¶ 11, 23, 60, 72).  The Allstate Policies exclude losses consisting of or caused by "settling, cracking, shrinking, bulging or expansion of . . . foundations" as well as "faulty, inadequate or defective . . . materials used in repair, construction, renovation or remodeling; or maintenance."  ((DeMeo Decl., Exh. H, Aff. of P. Torres, *Exh. 1* at p. 7-8, *Exh. 2* at p. 7, and *Exh. 3* at pp. 8-9).  The dispute between the parties is whether the

- 30 -

additional provision for collapse applies turns on whether there was a "sudden and accidental" "entire collapse" of all or a portion of Plaintiffs' home during Allstate's policy period. As discussed above, Plaintiffs cannot establish that a such a collapse occurred, and, at a bare minimum, Allstate has a good faith basis for disputing coverage.  As this Court recently recognized in *Kim v. State Farm Fire & Cas. Co.*, Docket No. 3:15-cv-879, 2015 U.S. Dist. LEXIS 147823, at *12 (D. Conn. Oct. 30, 2015), in granting an insurer's motion to dismiss a bad faith count, the fact that "Plaintiffs disagree with Defendant's belief that these provisions of the Policy bar coverage does not evince bad faith sufficient to support a breach of the implied duty of good faith and fair dealing, or to otherwise suggest that the Defendant acted in 'an arbitrary and unfounded' manner." *Id.*   Accordingly, Allstate is entitled to summary judgment on Plaintiffs' bad faith count.

## V.  ALLSTATE IS NOT LIABLE UNDER CUTPA/CUIPA

### A. Because Allstate Is Entitled To Summary Judgment As To The Breach Of Contract Count, It Is Also, As A Matter Of Law, Entitled To Summary Judgment As To The CUTPA/CUIPA Counts

Connecticut courts have held that when an insurer is entitled to summary judgment with respect to an insured's breach of contract count, then, as a matter of law, it is also entitled to summary judgment with respect to an insured's CUIPA/CUTPA count, particularly where the CUIPA/CUTPA count is premised on the insurer's allegedly improper failure to pay the claim. *See Ridley*, *supra*, 2014 U.S. Dist. LEXIS 99246 at *6-8 (granting summary judgment to insurer as to plaintiff's CUIPA/CUTPA count based upon finding that insurer did not breach insurance policy); *Rancourt v. Allstate Ins. Co.*, Docket No. CV-06-5001222, 2008

Conn. Super. LEXIS 3024 at *7 (Conn. Super. Ct. December 1, 2008) (Abrams, J.) ("[S]ince the defendant [insurer] had no obligation to pay under the policy, the defendant could not have violated CUIPA or CUTPA."); *Vincenzi*, supra, 1997 Conn. Super. LEXIS 311 at *7 (finding that where insurer found to have no obligation to pay, CUIPA/CUTPA claim based upon refusal to pay fails as well); *Wright v. State Farm Mutual Automobile Ins. Co.*, Docket No. CV-96-0561270, 1997 Conn. Super. LEXIS 3122, at *9-10 (Conn. Super. Ct. Nov. 18, 1997) (Aurigemma, J.) ("[Insured's] failure to comply with the terms of the policy relieved State Farm of its obligations thereunder.  Having no obligation to pay under the policy, State Farm could not have violated CUIPA or CUTPA.").

In this case, Plaintiffs' CUTPA/CUIPA claim in Count VI of the Complaint alleges that Allstate has wrongfully denied their insurance claim – by "giving the insured a knowingly false and misleading reason for the denial of coverage" (Id., ¶ 93), and "arbitrarily refus[ing] to pay a claim which a reasonable person would determine is covered. . . ." (Id., ¶ 95.)  However, because Allstate is entitled to summary judgment on the breach of contract claim in Count IV, Allstate had no obligation to indemnify Plaintiffs, it cannot be held liable for breach of CUTPA or CUIPA. *Wright*, 1997 Conn. Super. LEXIS 3122 at *10. Allstate is thus entitled to summary judgment on Count VI of the Complaint.

## B. Alternatively, There Is No Evidence In The Record to Support Plaintiffs' CUTPA/CUIPA Claims

In the alternative, even if the Court does not grant summary judgment on the breach of contract claim in Count IV, it should do so on with respect to the CUTPA/CUIPA claim in Count VI.  Section 38a-816 of CUIPA proscribes "unfair

methods of competition and unfair and deceptive practices in the business of insurance," including "unfair claim settlement practices." Conn. Gen. Stat. §38a-816(6).[9]  To prove a private cause of action under CUTPA for a CUIPA violation, however, Plaintiffs must show that Allstate engaged in the specific unfair claim practices set forth in their Complaint "with such frequency as to indicate a general business practice as required for a CUIPA claim*." Id.; see also Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 847, 643 A.2d 1282 (1994). "Under CUTPA, as under CUIPA, 'isolated instances of unfair insurer settlement practices' are not cognizable." *Craig v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296, 308 (D. Conn. 2004) (citation omitted).  Moreover, as with bad faith, there can be no liability under Conn. Gen Stat. § 38a-816(6) where the insurer's coverage position was, as here, reasonable and fairly debatable. *See, e.g., Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, 2009 Conn. Super. LEXIS 3508, *23 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.*, 2004 Conn. Super. LEXIS 564, *43 (Conn. Super. Ct. Mar. 3, 2004) (same result).

Here, Plaintiffs cannot meet the standards necessary to maintain a claim under CUTPA for violation of CUIPA. Asked in interrogatories to state in detail the factual basis for their CUIPA claim—as set forth in paragraph 94 of the Complaint, that Allstate has become a part of an industry wide practice of denying coverage

---

[9] **Plaintiffs claim that Allstate violated Conn. Gen. Stat. § 38a-816(6)(f)(, which proscribes "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (Compl., ¶ 97).**

for concrete decay claims notwithstanding the clear provisions of the Homeowner's Policy to the contrary—Plaintiffs answered that they "have no personal knowledge of Allstate's general business practice and . . . no personal knowledge of the insurance industry practice of denying concrete decay claims despite policy language in the standard Connecticut homeowner's insurance policy providing coverage for such claims . . . ." (DeMeo Decl., Exh. J, Pls' Resp. to Interrog., ¶ 20). Plaintiffs further testified at their depositions that they had no knowledge of ISO. (DeMeo Decl., Exh. A, S. Metsack Dep. 105:9-15; DeMeo Decl., Exh. B, G. Metsack Dep. 49:22-50:2). Plaintiffs, in their interrogatory responses, did state generally that they have been "informed of two (2) additional instances where Allstate has unfairly denied claims identical to [their] own" and provide a citation to two recently filed cases. (DeMeo Decl., Exh. J, Pls' Resp. to Interrog., ¶ 20). These conclusory statements, however, represent the sum total of Plaintiffs' "proof" of CUTPA/CUIPA violations by Allstate.

As this Court recognized recently in *Voccola v. Rooney*, 136 F. Sup. 3d 197, 204-05 (D. Conn. 2015), a plaintiff, "[a]t the summary judgment stage of the proceeding, . . . is required to present admissible evidence in support of [his] allegations; allegations alone, without evidence to back them up, are not sufficient. . . . . In other words, a plaintiff opposing summary judgment must produce more than a scintilla of evidence, i.e., the evidence must be sufficient for a jury to properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (Citations omitted; internal quotation marks omitted).

- 34 -

Here, beyond the allegations of the Complaint and the conclusory interrogatory responses referenced above, Plaintiffs cannot establish that Allstate has a "general business practice" of *wrongfully* denying so-called "concrete decay" claims. Plaintiffs have not cited to any other claims or cases to support their bald assertion that Allstate has engaged in general business practice of wrongful denials, and have therefore failed to establish that Allstate does not fairly settle claims "in which liability has become reasonably clear," in violation of CUIPA. Conn. Gen. Stat § 38a-816(6)(f) (Compl., ¶ 97). As noted above, Plaintiffs testified at their depositions that they do not believe that Allstate acted to mislead them. Similarly, Plaintiffs have not (and, more critically, cannot) offer any evidence regarding Allstate's participation, through ISO, in the alleged "industry wide practice" of wrongfully denying so-called "concrete decay" claims. This Court has already noted once in this case, in ruling on Liberty's motion to dismiss, that the "ISO allegation strikes this Court as failing to cross the line between 'possible' and 'plausible.'" *Metsack v. Liberty Mutual Fire Ins. Co.*, Docket No. 3:14-CV-01150, 2015 U.S. Dist. LEXIS 131984 at *26 (D. Conn. 2015). Alternatively, based on the facts alleged here, the Allstate's coverage position was, at a minimum, reasonable and fairly debatable. Accordingly, there can be no violation of CUIPA and CUTPA. *See, e.g., Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, supra, 2009 Conn. Super. LEXIS 3508 at *23; *Bauco v. Hartford Fire Ins. Co.*, supra, 2004 Conn. Super. LEXIS 564 at *43. Accordingly, Allstate is entitled to summary judgment on Plaintiffs' CUTPA/CUIPA claim.

- 35 -

## CONCLUSION

Plaintiffs have failed to demonstrate that they suffered a covered loss during Allstate's policy period.  Plaintiffs admit that their claimed loss is caused by the cracking and expansion of the walls of their basement, and by defective materials in construction, both losses specifically excluded by the Allstate Policies. They claim coverage for a "collapse" occurred, but their foundation continues to perform its essential functions, their home remains standing, and they continue to occupy it safely.  Moreover, the process of which they complain —gradual deterioration of foundation walls over nearly a quarter century—is not "sudden and accidental," as the Allstate Policies require.  Allstate is entitled to summary judgment on the breach of contract claim in Count IV of the Complaint, which means it can have no liability for bad faith or violations of CUTPA and CUIPA, as alleged in Counts V and VI, respectively.  Even in the absence of summary judgment on Count IV, however, a good faith coverage dispute such as this cannot form the basis of bad faith liability or liability under CUIPA, and there has been no showing of a "general business practice" of unfairly denying claims, as required to establish liability under CUTPA for violation of CUIPA.

For all of the foregoing reasons, Allstate respectfully requests that this Court enter an order granting summary judgment to Allstate on Counts IV, V, and VI of the First Amended Complaint.

DEFENDANT
ALLSTATE INSURANCE COMPANY

By    */s/ Raymond T. DeMeo*
        Raymond T. DeMeo (ct02189)
        Jessica A. R. Hamilton (ct29702)
        ROBINSON & COLE LLP
        280 Trumbull Street
        Hartford, CT 06103
        Phone:  860-275-8200
        Fax:  860-275-8299
        Email: rdemeo@rc.com
        Email: jhamilton@rc.com

## CERTIFICATION

I hereby certify that on July 18th, 2016, the foregoing Defendant's Memorandum in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by e-mail to all Parties by operation of the Court's electronic filing system (ECF).

*/s/ Raymond T. DeMeo* _____

Raymond T. DeMeo